BLANTON ROBERTS                          *    IN THE
1308 Wildwood Parkway, Apt. 5
Baltimore, Maryland 21229                *    UNITED STATES

     Plaintiff                        *    DISTRICT COURT
v.
                                         *    FOR THE DISTRICT

OFFICER MARCUS TAYLOR                    *    OF MARYLAND
7555 Waterloo Road
Jessup, MD 20794                         *
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.              *

                                         *
AND
                                         *
OFFICER EVODIO HENDRIX
1030 Rock Spring Road                    *
Bel Air, MD 21014
Individually and as a police officer for *
BALTIMORE CITY POLICE DEPT.
                                         *
AND
                                         *
OFFICER MAURICE WARD
7800 House of Corrections Road           *
Jessup, MD 20794
Individually and as a police officer for *
BALTIMORE CITY POLICE DEPT.
                                         *
AND
                                         *
SERGEANT WAYNE JENKINS
30420 Revells Neck Road                  *
Westover, MD 21890
Individually and as a police officer for *
BALTIMORE CITY POLICE DEPT.
                                         *
AND
                                         *
OFFICE OF THE STATE'S ATTORNEY
FOR BALTIMORE CITY                       *
S/O: Marilyn Mosby
120 E. Baltimore Street                  *
Baltimore, Maryland 21202
                                         *

AND

                                 *

BALTIMORE CITY POLICE DEPT.
S/O: Gary Tuggle, Acting Police Comm.   *
601 E. Fayette Street
Baltimore, Maryland 21202            *

AND                            *

SERGEANT THOMAS ALLERS    *
7410 MacArthur Boulevard
Oklahoma City, Oklahoma 73169   *
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.   *

AND                            *

MAJOR IAN DOMBROWSKI      *
1913 Linden Avenue
Baltimore, Maryland 21217         *
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.   *

AND                            *

DEP. POLICE COMM. DEAN PALMERE *
1323 Crofton Drive, Lot 22
Bel Air, Maryland 21014           *
Individually and Dep. Police Commissioner for
BALTIMORE CITY POLICE DEPT.   *

     Defendants.
*    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND JURY TRIAL DEMAND

     **COMES NOW** Plaintiff Blanton Roberts (hereinafter "Mr. Roberts," "Plaintiff," and "Plaintiff Roberts"), by and through his attorneys Joshua L. Insley, Esquire, Hannah M. Ernstberger, Esquire, and the law office of Saller & Bishop, and complaining of the acts of the Defendants alleges and states as follows:

## INTRODUCTION

In this action, Plaintiff Roberts seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. §1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Roberts of his civil rights and constitute egregious and objectively unreasonable violation of numerous rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution and Maryland law. Numerous Defendants participated in Plaintiff Roberts being unlawfully stopped, forcefully taken to the ground, unconstitutionally searched, and illegally arrested after a gun was planted by the Defendant Officers. The remaining Defendants were aware of the custom of violating citizens' civil rights and condoned, or otherwise failed to adequately train and supervise, such actions. In this instance of carrying out the custom, Plaintiff Roberts had his civil rights violated when he was illegally stopped, searched, arrested and prosecuted for crimes which he did not commit, but instead were fabricated by the Defendant Officers.

## PARTIES

1.     Plaintiff, Blanton Roberts, is a 37-year-old, African American citizen of the United States residing at 1308 Wildwood Parkway, Apartment 5, Baltimore, Maryland 21229.

2.     Defendant Officer Marcus Taylor (hereinafter "Officer Taylor," "Defendant Taylor," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police

Officer. Defendant Taylor was on duty and participated in the stop and apprehension of Plaintiff Roberts. Defendant Taylor is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

3.      Defendant Officer Evodio Hendrix (hereinafter "Officer Hendrix," "Defendant Hendrix," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Hendrix was on duty and participated in the stop and apprehension of Plaintiff Roberts. Defendant Hendrix is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

4.      Defendant Officer Maurice K. Ward Jr. (hereinafter "Officer Ward," "Defendant Ward," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Ward was on duty and participated in the stop and apprehension of Plaintiff Roberts. Defendant Ward is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

5.      Defendant Sergeant Jenkins (hereinafter "Sgt. Jenkins," "Defendant Jenkins," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore Police Department as an officer of the Gun Trace Task Force

and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Jenkins was on duty and participated in the stop and apprehension of Plaintiff Roberts. Defendant Jenkins is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

6.      Defendant Office of the State's Attorney for Baltimore City (hereinafter "SAO") is an agency of the City of Baltimore. The SAO is responsible for prosecuting defendants that commit crimes that occur within the City. The SAO has its principal offices at 120 East Baltimore Street, 9th Floor, Baltimore, Maryland 21202. Upon information and belief, the SAO reposed decision-making authority regarding the prosecution of defendants arrested by Defendant Baltimore City Police Department and the handling of allegations of civil rights violations against police officers.

7.      Regarding Plaintiff's state claims, Defendant SAO is sued under 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

8.      Defendant SAO, in conjunction with Defendant Baltimore City Police Department, has encouraged, tolerated, ratified, and has been deliberately indifferent to the following patterns, practices, and customs and the need for more or different training, supervision, investigation or discipline in the areas of:

   a. The use of unreasonable force, excessive force and unlawful arrest by police officers;

   b. The improper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force, unlawful arrest, death while in custody, and violations of citizens' Constitutional rights, particularly in

connection with unlawful search and seizure, and racially motivated acts by its police officers;

c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

e. Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

f. The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

9.  Prior to October 7, 2015, Defendant SAO had actual or constructive knowledge that Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant Baltimore City Police Department were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant SAO implemented a policy and custom of condonation or deliberate indifference to the constitutional violations committed by Defendant Baltimore City Police Department's officers, had a custom or policy of failing to train its attorneys and staff adequately, and failed to adequately supervise its attorneys and staff.

10.     Defendant SAO's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

11.     Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information and belief, the BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

12.     Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), *see also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

13.     Regarding Plaintiff's state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

14.     Defendant BPD conspired with Defendant SAO to encourage, tolerate, ratify, and be deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a. The use of unreasonable force, excessive force and unlawful arrest by police officers;

b. The improper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force, unlawful arrest, death while in custody, and violations of citizens' Constitutional rights, particularly in connection with unlawful search and seizure, and racially motivated acts by its police officers;

c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

e. Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

f. The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

15. Prior to October 7, 2015, Defendant BPD had actual or constructive knowledge that Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and

adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to the use of excessive force by its officers, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendant Hendrix, Ward, Jenkins, and Taylor.

16.     Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

17.     Defendant Sergeant Thomas Allers (hereinafter "Sgt. Allers" and "Defendant Allers") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as the supervisor of the Gun Trace Task Force. Defendant Allers is sued in his individual and official capacity under 42 U.S. § 1983, § 1985, and § 1988.

18.     Defendant Allers, through his personal and official capacity as a supervisor officer employed by Defendant BPD, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers and had a custom or policy of failing to train Defendant BPD officers adequately.

19.     Defendant Allers, in his personal and official capacity, failed to adequately supervise Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

20.     Defendant Allers, in his personal and official capacity, participated in the actions of Defendant Officers' criminal enterprise including, but not limited to, illegally seizing money from citizens

21.     Defendant Allers' supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Allers was the Gun Trace Task Force

supervisor on October 7, 2015, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

22.     Defendant Major Ian Dombrowski (hereinafter "Major Dombrowski" and "Defendant Dombrowski") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as a Major in Defendant BPD's Internal Affairs Division. Defendant Dombrowski is sued in his individual and professional capacity under 42 U.S. § 1983, § 1985, and § 1988.

23.     Defendant Dombrowski, through his official capacity as a Major in Defendant BPD's Internal Affairs Division, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers and had a custom or policy of failing to investigate and discipline Defendant BPD officers adequately.

24.     Defendant Dombrowski, in his personal and official capacity, failed to adequately investigate and discipline Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

25.     Defendant Dombrowski's supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Dombrowski was a Major in Defendant BPD's Internal Affairs Division on October 7, 2015, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

26.     Defendant Police Deputy Commissioner Dean Palmere (hereinafter "Commissioner Palmere" and "Defendant Palmere") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as Deputy Police Commissioner. Defendant Palmere is sued in his individual and official capacity under 42 U.S. § 1983, § 1985, and § 1988.

27.     Defendant Palmere, through his official capacity as Deputy Police Commissioner of Defendant BPD, implemented a policy or custom of condonation or deliberate indifference to

the constitutional violations committed by Defendant BPD officers and had a custom or policy of failing to train Defendant BPD officers adequately.

28.     Defendant Palmere actively coached the officers of Defendant BPD's Gun Trace Task Force as to what to testify to in court when confronted with allegations of illegal activity in order to further shield the actions from discovery.

29.     Defendant Palmere, in his personal and official capacity, failed to adequately supervise Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

30.     Defendant Palmere's supervisory acts and failures to act were the direct acts are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Palmere was the Deputy Police Commissioner on October 7, 2015, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

31.     At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

32.     The above and all other allegations herein are incorporated by reference as if fully set forth.

33.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S. § 1983, § 1985, and § 1988, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

34.    Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

35.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

## FACTUAL ALLEGATIONS

36.    The above and all other allegations herein are incorporated by reference as if fully set forth.

37.    At all times relevant, Defendants Hendrix, Ward, Jenkins, and Taylor were members of the Defendant BPD's Gun Trace Task Force.

38.    At all times relevant, Defendant Allers was the supervisory Sergeant of Defendant BPD's Gun Trace Task Force.

39.    At all times relevant, Defendant Dombrowski was employed by Defendant BPD as a Major in the Baltimore City Police Internal Affairs Division.

40.    At all times relevant, Defendant Palmer was employed by Defendant BPD as Deputy Police Commissioner.

41.    At all times during the course of these events, Defendant BPD had advance notice that members of Gun Trace Task Force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, the Gun Trace Task Force planting evidence, stealing of money from citizens, and using excessive force.

42.    At all times during the course of these events, Defendant SAO had prior notice of the criminal activity of the Gun Trace Task Force members and actively engaged in the

protection of the rogue unit. Beginning in 2009, Defendant SAO disclosed to criminal defendants and their counsel that members of the Gun Trace Task Force had been caught stealing. Commencing with the installation of the Administration of Marilyn Mosby, Defendant SAO ceased providing the disclosures and denied that they existed.

43.     Defendants BPD and SAO have implemented a policy or custom of condonation or deliberate indifference to the use of planted evidence, illegal search and seizures, and misuse of police powers by Defendant BPD officers.

44.     Defendant BPD has failed to adequately train and supervise Defendant BPD's officers in proper arrest, search and seizure, and use of police powers.

45.     Defendant SAO has failed to adequately train and supervise its attorneys and employees in the proper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers.

46.     Each of these factual allegations are supported by the incidents detailed below and the complaint set forth herein.

### Gary Brown Incident

47.     On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Officers Jamel Rayam and Jason Giordano of Defendant BPD's Gun Trace Task Force were on patrol in plain clothes as part of the Northern District Drug Unit.

48.     The two officers saw another officer they believed to be Office Michael Sylvester engaged in a traffic stop in plain clothes. Officers Rayam and Giordano verified Officer Sylvester's identity and assisted in the stop.

49.     The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

50.     In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

51.     On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

52.     On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

53.     On that same day Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00. The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

54.     On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of Defendant SAO's Police Integrity Unit. Included were the polygraph results.

55.     Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Defendant SAO's Doug Ludwig sent a letter to Internal Affairs stating Defendant SAO would not be pursuing charges against the officers involved in the theft.

56.     On July 14, 2010, Officers Rayam and Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown. (Exhibit 1).

### Gary Clayton Case

57. On May 4, 2015, Defendant SAO filed an indictment in case number 115124016 against Gary Clayton. The case was brought by the Gun Trace Task Force.

58. On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force. (Exhibit 2)

59. The attached affidavit in support of the Motion for Franks Hearing alleged that Defendant Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Defendant Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter. In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

60. The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The Office of the State's Attorney for Baltimore City was represented by Assistant State's Attorney Kent Grasso. Judge Williams found Officer Jemel Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Officer Jemel Rayam.

61. Defendant SAO entered Nolle Prosequi to the indictment on the same day.

62. On January 12, 2016, Defendant SAO's Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of Defendant SAO, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing. (Exhibit 3)

63. On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant Dombrowski, the Head of Defendant BPD Internal Affairs Division outlining the

concerns the Office had with Gun Trace Task Force member Rayam. (Exhibit 4) The memo states that Defendant SAO would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemel Rayam in cases "where Jemel Rayam is an essential witness."

64.     Defendant SAO made no mention of Defendant Jenkins threatening a woman with his handgun for asking him for his credentials.

### Rakeem Douglas Case

65.     On November 7, 2016, Defendant SAO brought Rakeem Douglas to trial in case number 816281001. The case originated in District Court under Case number 0B02334234. All police involved were members of the Gun Trace Task Force, including Jemel Rayam, Defendant Ward, and Defendant Jenkins. Defendant SAO dropped Jemel Rayam from their witness list when the case was sent from District Court to Circuit Court for a jury trial.

66.     Rakeem Douglas was represented by long term member of the Baltimore City defense bar, Mr. Lawrence Rosenberg. Mr. Rosenberg remembered the 2009 disclosure that previous State's Attorney's Administrations had disclosed. When he asked for it in his matter with Mr. Douglas, he was informed that the State did not deem Jemel Rayam as an "essential witness" so they would not be calling him, thus the disclosure was immaterial.

67.     These actions demonstrate a willful and deliberate strategy by Defendant SAO to keep the criminal acts of the Gun Trace Task Force concealed from the public, criminal defendants, their counsel and the courts.

## Kendall English Case

68.    On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts. He was indicted on August 20, 2015, under case number 115230019.

69.    On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force, including Defendant Allers, in their Application for a Search and Seizure warrant in the case. (Exhibit 5)

70.    On October 18, 2016, Defendant SAO filed an objection to defense's motion to disclose the CI that Jemel Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant. (Exhibit 6)

71.    On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion. (Exhibit 7)

72.    On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that the Internal Affairs Division file of Gun Trace Task Force Member Jemel Rayam be disclosed. Despite this being eight months after ASA StaciAnn Llewellyn's memo to Defendant Dombrowski, Defendant SAO not only had not been giving the disclosure to defendants, they were actively fighting them in court.

73.    At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Jemel Rayam that had bearing on his credibility. Due to the non-disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

74.     Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Jemel Rayam's testimony in the Franks Hearing from Gary Clayton's case.

75.     Defendant SAO objected to the disclosure.

76.     The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case." Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant Dombrowski of the Internal Affairs Division. (Exhibit 4)

77.     Nevertheless, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Jemel Rayam, in the affidavit in support of the search warrant used in the case.

78.     Defendant SAO objected to the disclosure.

79.     One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

## United States Department of Justice Investigation into Baltimore City Police Department

80.     On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. (Exhibit 8)

81.     The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

    a. Making unconstitutional stops, searches, and arrest;

    b. Using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans'

    c. Using excessive force; and

    d. Retaliating against people engaging in constitutionally-protected expression." (Exhibit 8, pg. 3)

82.    In regard to discrimination against African Americans, the report specifically found that "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly conduct."" (Exhibit 8, pg. 7)

83.    In regard to the use of constitutionally excessive force, the report specifically found that "BPD uses overly aggressive tactics that unnecessarily escalate encounters, increase tensions, and lead to unnecessary force, and fails to de-escalate encounters when it would be reasonable to do so. Officers frequently resort to physical force when a subject does not immediately respond to verbal commands, even where the subject poses no imminent threat to the officer or others. These tactics result from BPD's training and guidance." (Exhibit 8, pg. 8)

84.    Additionally, in regard to force used on fleeing suspects, the report states "BPD officers frequently engage in foot pursuits of individuals, even where the fleeing individuals are not suspected of violent crimes. BPD's foot pursuit tactics endanger officers and the community, and frequently lead to officers using excessive force on fleeing suspects

who pose minimal threat. BPD's aggressive approach to foot pursuits extends to flight in vehicles." (Exhibit 8, pg. 9)

85.     Following these findings, the report stated the Department's concerns about BPD's use of excessive force is compounded by BPD's ineffective oversight of the use of force, referencing the following statistics: "Of the 2,818 force incidents that BPD recorded in the nearly six-year period we reviewed, BPD investigated only ten incidents based on concerns identified through its internal review. Of these ten cases, BPD found only one use of force to be excessive." (Exhibit 8, pg. 9)

86.     Finally, the report made a number of findings regarding the deficient policies, training, supervision, and accountability throughout the BPD, stating, "BPD's systemic constitutional and statutory violations are rooted in structural failures. BPD fails to use adequate policies, training, supervision, data collection, analysis, and accountability systems, has not engaged adequately with the community it policies, and does not provide its officers with the tools needed to police effectively." (Exhibit 8, pg. 10)

**Federal Criminal Proceedings Against the Gun Trace Task Force**

87.     In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's Gun Trace Task Force officers, including Defendant Taylor, Defendant Hendrix, Defendant Ward, Defendant Jenkins, and Defendant Allers.

88.     Subsequently, a number of the officers pleaded guilty and others were found guilty at trial in front of this Court.

89.     On or about July 21, 2017, Defendant Hendrix and Defendant Ward pleaded guilty to racketeering conspiracy. Both Defendants were subsequently sentenced to seven years in prison each.

90.     On or about December 6, 2017, Defendant Allers pleaded guilty to racketeering conspiracy. Defendant Allers was subsequently sentenced to 15 years in prison.

91.     On or about January 5, 2018, Defendant Jenkins pleaded guilty to racketeering conspiracy, racketeering, robbery, destruction, alteration, of falsification of records in a federal investigation, and deprivation of rights under color of law. Defendant Jenkins was subsequently sentenced to 25 years in prison.

92.     On or about February 12, 2018, Defendant Taylor was found guilty on two counts of racketeering conspiracy, racketeering aiding and abetting, racketeering and robbery. Defendant Taylor was subsequently sentenced to 18 years in prison.

## PLAINTIFF'S CASE

93.     At or about 10:55 p.m. of October 7, 2015, Plaintiff was standing on the front porch of a residence located at 27 Abington Avenue in Baltimore, Maryland.

94.     Defendants Hendrix, Ward, Jenkins, and Taylor, while driving an unmarked police vehicle, pulled their vehicle in front of the residence and, suddenly and without warning, proceeded to approach the Plaintiff and forcefully drag him to the ground.

95.     Defendant Officers unlawfully and unconstitutionally searched the Plaintiff. At no time prior to this unlawful search did Plaintiff threaten Defendant Officers or any other individuals or cause the Defendant Officers to believe that the Officers or any other individual's safety was in danger.

96.     Defendant Officers then proceeded to unreasonably and forcefully handcuff Plaintiff and detain, seize, and arrest Plaintiff without an arrest warrant, without a search warrant, without exigent circumstances, without reasonable suspicion, without consent, and without probable cause to believe that Plaintiff was committing or had committed a crime.

97.     During the illegal search and arrest of Mr. Roberts, one or more of Defendant Officers planted evidence, namely a silver Lorcin L380, serial number 086229, at the scene to justify their unconstitutional actions.

98.     Defendants claimed that on the evening of October 7, 2015, they were patrolling in the area of Baltimore Street and North Abington Avenue in Baltimore, Maryland for illegal activity.

99.     Defendants claimed that they witnessed Mr. Roberts place his right hand near his waistband area and adjust an object. Based on this alleged observation, Defendants claimed to believe Mr. Roberts was armed with a firearm.

100.     Defendants claimed that Defendant Taylor began to approach Mr. Roberts when they observed Mr. Roberts pull out a silver firearm while turning his back to the Defendant Officers and open the door to the residence.

101.     Defendant Taylor claimed it was at this point that he grabbed ahold of Mr. Roberts and assisted him to the floor of the porch while Mr. Roberts struggled with Defendant Officers. During this struggle, Defendants claimed that Mr. Roberts tossed the firearm off the porch, to the ground.

102.     Defendants claimed that Defendant Ward quickly recovered the firearm which was later identified as a silver Lorcin L380, serial number 086229, containing one live round in the chamber and five more live rounds in the magazine.

103. Defendants claimed that it was then that Mr. Roberts was placed into custody and searched. Defendants claimed that they recovered three small clear bags containing suspected marijuana in the amount of less than ten grams from Mr. Roberts' pants pocket.

104. Mr. Roberts was subsequently indicted for violating Maryland Annotated Criminal Code Section 4-203 (Wearing, carrying, or transporting handgun on person), Maryland Annotated Criminal Code Section 5-622 (Possessing, owning, carrying, or transporting a firearm while a prohibited person), and Public Safety Article, Section 5-133 (Possessing a firearm after having been convicted of a drug felony; Possessing a firearm after having been convicted of a felony; and Possessing ammunition while being prohibited from possessing a regulated firearm).

105. Mr. Roberts was held in state custody while he awaited trial.

106. On July 12, 2016, Mr. Roberts pled guilty to violating Public Safety Article, Section 5-133(c), possessing a regulated firearm after having been convicted of a drug felony, and to a subsequent Violation of Probation, for which Mr. Roberts was sentenced to a term of imprisonment.

107. On March 1, 2017, all of the members of Defendant BPD involved with this case were indicted in the United States District Court of Maryland for being a rogue criminal enterprise that routinely stole, planted evidence and committed violent felonies in furtherance of their criminal enterprise.

108. On July 5, 2017, the State's Attorney's Office moved to withdraw Mr. Roberts' guilty plea and entered a Nolle Prosequi for each of the original charges and violation of probation.

109.   Mr. Roberts was subsequently released from prison, nearly two years after his false arrest.

## COUNT I
### (Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Taylor, in his official and personal capacity)

110.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

111.   At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

112.   The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Taylor did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

113.   The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

114.   There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Roberts for illegal possession of a firearm after Defendant Officers planted one at the scene.

115.   The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

116.   The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

117.   As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II
### (Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Taylor, in his official and personal capacity)

118. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

119. At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

120. Defendant Officers searched Plaintiff's person without a search warrant and without probable cause to believe Plaintiff was committing or had committed a crime.

121. The act of searching Plaintiff without probable cause or a warrant amounts to an unlawful search.

122. There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers searched Mr. Roberts for a possession of a firearm and subsequently planted one at the scene.

123. As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>**COUNT III**</u>
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Taylor, in his official and personal capacity)**

124.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

125.     At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

126.     By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

127.     The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

128.     Such action caused Mr. Roberts to be unlawfully deprived of his liberty.

129.     Defendant Taylor participated in detaining and arresting Plaintiff Roberts.

130.     As a result of the actions of Defendant Taylor, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

131.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT IV
### (Intentional Infliction of Emotional Distress – Officer Taylor, in his official and personal capacity)

132.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

133.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

134.    Defendant Taylor acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

135.    Defendant's conduct, which included illegally detaining, searching, and arresting Plaintiff, disoriented and humiliated Plaintiff.  His unfounded detention and arrest amounted to extreme and outrageous conduct.

136.    Defendant Taylor's acts were intentional, reckless, and in deliberate disregard of a high degree of a probability that emotional distress would result from his illegal arrest of an innocent man.

137.    The conduct Defendant Taylor engaged in with Plaintiff is made even more extreme and outrageous by the fact he was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

138.    As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

139.    The Defendant's actions violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT V
### (Violation of Maryland Declaration of Rights – Officer Taylor, in his official and personal capacity)

140.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

141.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD.

142.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

143.    Plaintiff incorporates all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, false imprisonment, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

144.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

145.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

146.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT VI
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Hendrix, in his official and personal capacity)**

147.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

148.     At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

149.     The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Hendrix did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

150.     The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

151.     There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Roberts for illegal possession of a firearm after Defendant Officers planted one at the scene.

152.     The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

153.     The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

154.     As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VII
**(Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Hendrix, in his official and personal capacity)**

155.　The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

156.　At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

157.　Defendant Officers searched Plaintiff's person without a search warrant and without probable cause to believe Plaintiff was committing or had committed a crime.

158.　The act of searching Plaintiff without probable cause or a warrant amounts to an unlawful search.

159.　There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers searched Mr. Roberts for a possession of a firearm and subsequently planted one at the scene.

160.　As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VIII
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Hendrix, in his official and personal capacity)**

161.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

162.     At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

163.     By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

164.     The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

165.     Such action caused Mr. Roberts to be unlawfully deprived of his liberty.

166.     Defendant Hendrix participated in detaining and arresting Plaintiff Roberts.

167.     As a result of the actions of Defendant Hendrix, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

168.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT IX

**(Intentional Infliction of Emotional Distress – Officer Hendrix, in his official and personal capacity)**

169.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

170.     At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

171.     Defendant Hendrix acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

172.     Defendant's conduct, which included illegally detaining, searching, and arresting Plaintiff, disoriented and humiliated Plaintiff. His unfounded detention and arrest amounted to extreme and outrageous conduct.

173.     Defendant Hendrix's acts were intentional, reckless, and in deliberate disregard of a high degree of a probability that emotional distress would result from his illegal arrest of an innocent man.

174.     The conduct Defendant Hendrix engaged in with Plaintiff is made even more extreme and outrageous by the fact he was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

175.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

176.     The Defendant's actions violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT X
**(Violation of Maryland Declaration of Rights – Officer Hendrix, in his official and personal capacity)**

177.　The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

178.　At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD.

179.　Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

180.　Plaintiff incorporates all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, false imprisonment, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

181.　Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

182.　Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

183.　This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XI
### (Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Ward, in his official and personal capacity)

184.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

185.    At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

186.    The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Ward did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

187.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

188.    There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Roberts for illegal possession of a firearm after Defendant Officers planted one at the scene.

189.    The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

190.    The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

191.    As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>**COUNT XII**</u>
**(Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Ward, in his official and personal capacity)**

192.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

193.    At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

194.    Defendant Officers searched Plaintiff's person without a search warrant and without probable cause to believe Plaintiff was committing or had committed a crime.

195.    The act of searching Plaintiff without probable cause or a warrant amounts to an unlawful search.

196.    There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers searched Mr. Roberts for a possession of a firearm and subsequently planted one at the scene.

197.    As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIII
### (False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Ward, in his official and personal capacity)

198.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

199.     At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

200.     By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

201.     The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

202.     Such action caused Mr. Roberts to be unlawfully deprived of his liberty.

203.     Defendant Ward participated in detaining and arresting Plaintiff Roberts.

204.     As a result of the actions of Defendant Ward, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

205.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIV
**(Intentional Infliction of Emotional Distress – Officer Ward, in his official and personal capacity)**

206.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

207.     At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

208.     Defendant Ward acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

209.     Defendant's conduct, which included illegally detaining, searching, and arresting Plaintiff, disoriented and humiliated Plaintiff.  His unfounded detention and arrest amounted to extreme and outrageous conduct.

210.     Defendant Ward's acts were intentional, reckless, and in deliberate disregard of a high degree of a probability that emotional distress would result from his illegal arrest of an innocent man.

211.     The conduct Defendant Ward engaged in with Plaintiff is made even more extreme and outrageous by the fact he was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

212.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

213.     The Defendant's actions violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

<u>COUNT XV</u>
**(Violation of Maryland Declaration of Rights – Officer Ward, in his official and personal capacity)**

214.　The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

215.　At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD.

216.　Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

217.　Plaintiff incorporates all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, false imprisonment, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

218.　Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

219.　Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

220.　This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XVI
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Jenkins, in his official and personal capacity)**

221.　The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

222.　At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

223.　The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Jenkins did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

224.　The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

225.　There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Roberts for illegal possession of a firearm after Defendant Officers planted one at the scene.

226.　The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

227.　The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

228.　As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XVII**

**(Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Jenkins, in his official and personal capacity)**

229.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

230.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

231.    Defendant Officers searched Plaintiff's person without a search warrant and without probable cause to believe Plaintiff was committing or had committed a crime.

232.    The act of searching Plaintiff without probable cause or a warrant amounts to an unlawful search.

233.    There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers searched Mr. Roberts for a possession of a firearm and subsequently planted one at the scene.

234.    As a result of the Defendant's conduct and actions, Mr. Roberts suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVIII
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Jenkins, in his official and personal capacity)**

235.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

236.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

237.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

238.    The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

239.    Such action caused Mr. Roberts to be unlawfully deprived of his liberty.

240.    Defendant Jenkins participated in detaining and arresting Plaintiff Roberts.

241.    As a result of the actions of Defendant Jenkins, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

242.    At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIX
**(Intentional Infliction of Emotional Distress – Officer Jenkins, in his official and personal capacity)**

243.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

244.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

245.    Defendant Jenkins acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

246.    Defendant's conduct, which included illegally detaining, searching, and arresting Plaintiff, disoriented and humiliated Plaintiff. His unfounded detention and arrest amounted to extreme and outrageous conduct.

247.    Defendant Jenkins's acts were intentional, reckless, and in deliberate disregard of a high degree of a probability that emotional distress would result from his illegal arrest of an innocent man.

248.    The conduct Defendant Jenkins engaged in with Plaintiff is made even more extreme and outrageous by the fact he was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

249.    As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

250.    The Defendant's actions violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XX
**(Violation of Maryland Declaration of Rights – Officer Jenkins, in his official and personal capacity)**

251.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

252.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

253.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

254.    Plaintiff incorporates all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, false imprisonment, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

255.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

256.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

257.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XXI
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendants Taylor, Hendrix, Ward, and Jenkins)

258.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

259.    At all times pertinent to the complaint, Defendants Taylor, Hendrix, Ward, and Jenkins entered in to a civil conspiracy with each other, other members of the Defendant BPD's Gun Trace Task Force, Defendant BPD, and Defendant SAO to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

260.    These actions include, but are not limited to, making material misrepresentations of fact or omissions to tribunals, namely the Circuit Court for Baltimore City, specifically in the matter of Kendall English detailed above, and participating in the violation of citizens' civil rights, specifically using excessive force, affecting illegal arrests, and illegally seizing citizens' money and valuables.

261.    As a result of this civil conspiracy, Plaintiff was subject to unlawful search, arrest, detention and injuries two years before the first Defendant Officers were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXII
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)

262.    The foregoing and all other paragraphs herein are incorporated by reference as

if fully set forth.

263. At all times pertinent to the complaint, Defendant SAO entered in to a civil conspiracy with Defendant BPD and the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

264. These actions include, but are not limited to, making material misrepresentations of fact or omissions to tribunals, namely the Circuit Court for Baltimore City, specifically in the matter of Kendall English detailed above. Additionally, the State's Attorney for Baltimore City stopped making disclosures to defendants about the crimes the Gun Trace Task Force and its members had committed.

265. The Office of the State's Attorney for Baltimore City halted the lawful disclosure of prior bad acts by the unit and continued to protect them despite memos to Defendant Dombrowski that they would begin making disclosures on the Gun Trace Task Force Members again.

266. An unnamed Assistant States Attorney informed the members of the Gun Trace Task Force that they were under investigation from the United States Government in an effort to help the criminal enterprise evade detection.

267. Defendant SAO knowingly permitted the members of the Gun Trace Task Force to operate a criminal enterprise after they had been informed the members had committed perjury in the Franks Hearing for Gary Clayton as outlined above. This constitutes an agreement or understanding between the parties that Defendant SAO permitted and/or encouraged these illegal activities.

268. As a result of this civil conspiracy, Plaintiff was subject to unlawful search, arrest, detention and injuries two years before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIII
### (Aider & Abettor Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)

269. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

270. At all times, Defendant SAO provided substantial assistance, aid, and encouragement to the Gun Trace Task Force and its members' criminal activities.

271. Defendant SAO had actual knowledge of the wrongful conduct of the Gun Trace Task Force and its members and the role they played in furthering such conduct by failing to make lawful disclosures and structuring prosecutions such as the case of Rakeem Douglas cited above to conceal the illegal activities of their co-defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIV

**(Malicious Prosecution Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)**

272.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

273.   Plaintiff hereby alleges that the institution of criminal proceedings by way of case number 115316007 (originally District Court case number 3B02310899) was without probable cause.

274.   The prosecution was instituted with malice or purpose other than to bring the Defendant of that case to justice.

275.   By the time the trial was brought by the Defendant SAO for Baltimore City, the same office had notice that the members of the Gun Task Force were committing robberies, perjuring themselves in court, and had violently brandished firearms without justification on innocent civilians in Baltimore City, yet they continued to accept the plea by the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT XXV
**(Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)**

276.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

277.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant SAO is prohibited from allowing, enabling, and facilitating Defendant BPD's officers to engage in a pattern, practice, policy or custom of violating

citizens' constitutional rights and is obligated to train and supervise its attorneys in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of same.

278. As alleged herein, Defendant SAO has engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating Defendant BPD officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

279. Upon information and belief, Defendant SAO has allowed, enabled, and facilitated officers in engaging in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

280. As alleged herein, Defendant SAO entered in to a civil conspiracy with Defendant BPD and the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

281. As alleged herein, Defendant SAO has engaged in a pattern of affirmatively covering up systemic rights violations committed by Defendant BPD's officers through not calling Detective Rayam as a witness, failing to make disclosures of prior rights violations incidents, continuing to call members of the Gun Trace Task Force after having knowledge of their ongoing, systemic civil rights violations, and issuing declination letters prior to the completion of Internal Affairs Division's investigation.

282. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant BPD and Defendant SAO.

283. Upon information and belief, Defendant SAO has failed to properly investigate and discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

284. Defendant SAO's failure to take remedial actions against and affirmative covering up of the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXVI
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)**

285. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

286. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant SAO is prohibited from allowing, enabling, and facilitating Defendant BPD's officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

287.   As alleged herein, Defendant SAO has engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating Defendant BPD's officers to misuse police powers in connection with subduing and/or apprehending individuals. Defendant SAO has failed to adequately train its attorneys and employees attorneys in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of same.

288.   At all relevant times Defendant SAO, directly and through its employees, agents, and attorneys, had an obligation to ensure that its employees, agents, and attorneys exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

289.   Upon information and belief, the training provided and/or required by Defendant SAO regarding incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers was inadequate, insufficient, or nonexistent, and Defendant SAO, directly and through its employees, agents, and deputies, failed to exercise the above requisite degree of care in the training of all employees, agents, and deputies under its direction and control.

290.   It was readily foreseeable and highly predictable that failing to properly train Defendant SAO's attorneys in the proper handling of incidents of corruption would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant SAO was indifferent to same.

291.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant SAO's

failure to adequately train its employees in dealing with repeated incidents of the same nature by the same officers.

292.   As alleged herein, Defendant SAO entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

293.   As a direct and proximate result of Defendant SAO's failure adequately train its attorneys and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXVII
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant SAO)**

294.   The above and all other paragraphs herein are incorporated by reference as if fully set forth.

295.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant SAO is prohibited from allowing, enabling, and facilitating Defendant BPD's officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its attorneys in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of same.

296.	At all relevant times, Defendant SAO, directly and through its employees, agents, and attorneys, had an obligation to ensure that its employees, agents, and attorneys exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

297.	Upon information and belief, the supervision provided and/or required by Defendant SAO regarding incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers was inadequate, insufficient, or nonexistent, and Defendant SAO, directly and through its employees, agents and attorneys, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

298.	As alleged herein, Defendant SAO has engaged in a pattern, practice, policy, or custom of indifference to incidents of Defendant BPD officers misuse of police powers in connection with subduing and/or apprehending individuals and in so doing have failed to properly supervise Defendant SAO attorneys and employees in the proper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers.

299.	It was readily foreseeable and highly predictable that failing to properly supervise Defendant SAO's attorneys and employees in the proper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant SAO was indifferent to same.

300.     As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant SAO's failure to adequately supervise its attorneys and employees to deal with the same.

301.     As a direct and proximate result of Defendant SAO's failure to adequately supervise its attorneys and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

302.     Defendant SAO's failure to properly supervise its attorneys and employees was tantamount to deliberate indifference.

303.     Defendant SAO's failure to adequately supervise further confirms the aforementioned pattern and practice.

304.     As alleged herein, Defendant SAO has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

305.     Defendant SAO was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

306.     Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant SAO as alleged herein.

307.     As alleged herein, Defendant SAO entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

308.    Defendant SAO's attorneys and employees improper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

309.    As a direct and proximate result of Defendant SAO's deliberate indifference to the supervision of its attorneys and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXVIII
**(Civil Conspiracy Pursuant to 42 U.S.C. §§1983, 1985, and 1988 – Defendant BPD)**

310.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

311.    At all times pertinent to the complaint, Defendant BPD entered in to a civil conspiracy with the named Defendants of the Gun Trace Task Force to facilitate and enable members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

312.    These actions include, but are not limited to, failing to conduct meaningful Internal Affairs investigation despite being confronted with allegations that Defendant Officers were engaging in a pattern of illegal searches, seizures, and arrests, continuing to employ the Defendant Officers after findings of illegal activity were made, and failing to

reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

313.	As a result of this civil conspiracy, Plaintiff was subject to unlawful arrest, detention and injuries two years before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and for costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIX
**(Aider & Abettor Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)**

314.	The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

315.	At all times, Defendant BPD provided substantial assistance, aid, and encouragement to the Gun Trace Task Force and its members' criminal activities.

316.	Defendant BPD had actual knowledge of the wrongful conduct of the Gun Trace Task Force and its members and their role in furthering such conduct through failing to investigate and reprimand any of the officers involved despite actual knowledge of illegal activity.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with

interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXX
### (Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)

317.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

318.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper arrest procedures and use of police powers.

319.    As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating Defendant BPD officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

320.    Upon information and belief, Defendant BPD's officers have been allowed, enabled, and facilitated in engaging in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

321.    As alleged herein, Defendant BPD entered in to a civil conspiracy with Defendant SAO and the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

procedures and use of police powers.

rights and is obligated to train and supervise to its law enforcement officers in the proper arrest

officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional

Constitution, Defendant BPD is prohibited from allowing, enabling, and facilitating its

326.    Under the Fourth and Fourteenth Amendments to the United States

fully set forth.

325.    The above and all other paragraphs herein are incorporated by reference as if

## COUNT XXXI
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)**

1988(b).

interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with

compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for

injuries.

unreasonable misconducts of these police officers was a proximate cause of Plaintiff's

324.    Defendant BPD's failure to take remedial actions against the pervasive and

police powers.

their improper, willful, wanton, and unlawful actions with respect to their improper uses of

named Officers, or anyone else for the conduct alleged herein, and as such has further ratified

323.    Upon information and belief, Defendant BPD has failed to discipline any of the

police and/or custom of the Defendant BPD.

absent any lawful justification and/or excuse, and was in keeping with the pattern practice,

322.    As alleged herein, the actions by all named Defendants was unreasonable,

327.    As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

328.    At all relevant times Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

329.    Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

330.    It was readily foreseeable and highly predictable that failing to properly train Defendant BPD's officers in the proper application of force would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant BPD was indifferent to same.

331.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper arrest, search and seizure and use of police powers.

332.    As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force, including the named Defendants,

to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

333. As a direct and proximate result of Defendant BPD's failure adequately train its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXII
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)**

334. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

335. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

336. At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

337. Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

338. As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

339. It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

340. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

341. As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

342. Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

343. Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

344. As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

345. Defendant BPD's was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

346. Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

347. As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

348. Defendant BPD's improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

349. As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXVIII
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Allers, in his personal and official capacity)

350.    The above and all other paragraphs herein are incorporated as if fully set forth.

351.    At all times pertinent to the complaint, Defendant Allers entered in to a civil conspiracy with the named Defendant Officers of the Gun Trace Task Force to facilitate and enable members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

352.    These actions include, but are not limited to, partaking in the criminal activities of the named Defendant Officers, specifically partaking in thefts and approving falsified overtime hours, failing to report any illegal searches, seizures, and arrests, continuing to employ the Defendant Officers after findings of illegal activity were made, failing to reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

353.    As a result of this civil conspiracy, Plaintiff was subject to unlawful arrest, detention and injuries two years before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with

interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXIV
**(Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Allers, in his personal and official capacity)**

354.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

355.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Allers is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

356.     As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

357.     As alleged herein, Defendant Allers was employed by Defendant BPD as the supervisor of the Gun Trace Task Force, and was therefore the supervisor of Defendants Taylor, Hendrix, Ward, and Jenkins.

358.     Upon information and belief, Defendant Allers permitted the named Defendant Officers to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

359. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Allers.

360. Upon information and belief, Defendant Allers has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

361. Upon information and belief, Defendant Allers not only failed to discipline any of the officers, but also partook in the ongoing corruption of the Gun Trace Task Force, including, but not limited to, partaking in thefts of innocent citizens, while acting in his official capacity as supervisor of the Gun Trace Task Force.

362. Defendant Allers' failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXV
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Allers, in his personal and official capacity)**

363. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

364. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Allers is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to his law enforcement officers in the proper arrest procedures and use of police powers.

365. As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

366. At all relevant times Defendant Allers, had an obligation exercise the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under his direction and control.

367. Upon information and belief, Defendant Allers permitted the named Defendant Officers to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

368. It was readily foreseeable and highly predictable that failing to properly train the named Defendant Officers in the proper use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant Allers was indifferent to same.

369. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Allers'

failure to adequately train his officers in dealing in proper arrest procedures, search and seizure and use of police powers.

370.    As a direct and proximate result of Defendant Allers' failure adequately train his officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXVI
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Allers,**
**in his personal and official capacity)**

371.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

372.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Allers is prohibited from allowing the named Defendant Officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

373.    At all relevant times, Defendant Allers had an obligation to ensure that the named Defendant Officers exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

374.    Upon information and belief, the supervision provided and/or required by Defendant Allers regarding proper arrest procedures and use of police powers was inadequate,

insufficient, or nonexistent, and Defendant Allers failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

375. As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers.

376. It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Allers was indifferent to same.

377. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Allers' failure to adequately supervise his officers.

378. As a direct and proximate result of Defendant Allers' failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

379. Defendant Allers' failure to properly supervise his officers, the named Defendant Officers of this complaint, was tantamount to deliberate indifference.

380. Defendant Allers' failure to adequately supervise further confirms the aforementioned pattern and practice.

381. As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

382. Defendant Allers was aware, and should have foreseen, that the named Defendant Officers would confront situations as that presented by Plaintiff.

383. Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Allers and have been similarly mishandled by Defendant Allers as alleged herein.

384. Defendant Allers' improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by the named Defendant Officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

385. As a direct and proximate result of Defendant Allers' deliberate indifference to the supervision of his officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXVII
(Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Dombrowski, in his personal and official capacity)

386.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

387.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Dombrowski is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

388.    As alleged herein, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

389.    As alleged herein, Defendant Dombrowski was employed by Defendant BPD as a Major of the Internal Affairs Division.

390.    Upon information and belief, Defendant Dombrowski, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Defendant Officers to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

391.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Dombrowski.

392.    Upon information and belief, Defendant Dombrowski has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has

further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

393. Upon information and belief, Defendant Dombrowski failed to discipline any of the officers, while acting in his official capacity as a Major of the Internal Affairs Division.

394. Defendant Dombrowski's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXXVIII
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Dombrowski, in his personal and official capacity)**

395. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

396. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Dombrowski is prohibited from allowing the named Defendant Officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

397. At all relevant times, Defendant Dombrowski had an obligation to ensure that the named Defendant Officers exercised the same degree of care that a reasonable and prudent

person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

398.    Upon information and belief, the supervision provided and/or required by Defendant Dombrowski regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Dombrowski failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

399.    As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers.

400.    It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Dombrowski was indifferent to same.

401.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Dombrowski's failure to adequately supervise his officers.

402. As a direct and proximate result of Defendant Dombrowski's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

403. Defendant Dombrowski's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

404. Defendant Dombrowski's failure to adequately supervise further confirms the aforementioned pattern and practice.

405. As alleged herein, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

406. Defendant Dombrowski was aware, and should have foreseen, that the named Defendant Officers would confront situations as that presented by Plaintiff.

407. Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Dombrowski and have been similarly mishandled by Defendant Dombrowski as alleged herein.

408. Defendant Dombrowski's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Defendant Officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

409. As a direct and proximate result of Defendant Dombrowski's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

the named Defendant Officers to engage in unlawful practices absent proper supervision or permitted the officers despite numerous complaints of their illegal activity, permitted

414.   Upon information and belief, Defendant Palmere, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Defendant Officers to engage in unlawful practices absent proper supervision or

413.   As alleged herein, Defendant Palmere was employed by Defendant BPD as a Deputy Police Commissioner.

412.   As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

411.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

410.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

## COUNT XXXIX
**(Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Palmere, in his personal and official capacity)**

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

415.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Palmere.

416.    Upon information and belief, Defendant Palmere has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

417.    Upon information and belief, Defendant Palmere failed to discipline any of the officers, while acting in his official capacity as a Deputy Police Commissioner.

418.    Defendant Palmere's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

COUNT XL
(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant
Palmere, in his personal and official capacity)

419.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

420. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

421. As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

422. At all relevant times Defendant Palmere, had an obligation exercise the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

423. Upon information and belief, Defendant Palmere permitted the named Defendant Officers to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

424. It was readily foreseeable and highly predictable that failing to properly train the named Defendant Officers in the proper use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant Palmere was indifferent to same.

425. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Palmere's

failure to adequately train his officers in dealing in proper arrest procedures, search and seizure and use of police powers.

426.    As a direct and proximate result of Defendant Palmere's failure adequately train his officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XLI
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant Palmere, in his personal and official capacity)

427.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

428.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing the named Defendant Officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

429.    At all relevant times, Defendant Palmere had an obligation to ensure that the named Defendant Officers exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

430.    Upon information and belief, the supervision provided and/or required by Defendant Palmere regarding proper arrest procedures and use of police powers was

inadequate, insufficient, or nonexistent, and Defendant Palmere failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

431. As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers.

432. It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Palmere was indifferent to same.

433. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Palmere's failure to adequately supervise his officers.

434. As a direct and proximate result of Defendant Palmere's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

435. Defendant Palmere's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

436.    Defendant Palmere's failure to adequately supervise further confirms the aforementioned pattern and practice.

437.    As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

438.    Defendant Palmere was aware, and should have foreseen, that the named Defendant Officers would confront situations as that presented by Plaintiff.

439.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Palmere and have been similarly mishandled by Defendant Palmere as alleged herein.

440.    Defendant Palmere's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Defendant Officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

441.    As a direct and proximate result of Defendant Palmere's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

Joshua L. Insley, Esquire
Hannah M. Ernstberger, Esquire
Salter & Bishop
12 S. Calvert Street, 2nd Floor
Baltimore, MD 21202
(410) 783-7945