IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BLANTON ROBERTS | * | |
| *Plaintiff*, | * | |
| v. | * | Civil No: 1:18-cv-01940 CCB_____ |
| MARCUS TAYLOR, *et al.*, | * | |
| *Defendants*. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
OFFICE OF THE STATE'S ATTORNEY FOR BALTIMORE CITY'S
MOTION TO DISMISS THE COMPLAINT**

Defendant, Office of the State's Attorney for Baltimore City ("SAO"), submits this memorandum in support of its motion to dismiss.

**INTRODUCTION**

Plaintiff, Blanton Roberts ("Mr. Roberts"), filed an eighty page complaint (ECF No. 1.) asserting various violations of federal law by the SAO and others arising out of an incident that occurred on October 7, 2015 in which he was charged with multiple criminal offenses. Mr. Roberts seeks actual and punitive damages. (ECF No. 1.)

Count XXII alleges civil conspiracy. Count XXIII alleges aider and abettor. Count XXIV alleges malicious prosecution. Count XXV alleges unconstitutional custom or practice of excessive use of force, unlawful arrest and improper use of police powers. Count XXVII alleges inadequate training. Count XXVII alleges failure to supervise.

All claims brought against the SAO are subject to dismissal. The SAO is entitled to dismissal of Mr. Roberts's complaint due to Eleventh Amendment immunity. The complaint should further be dismissed because all of the claims against the SAO are barred by common law immunities. Alternatively, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state any claim upon which relief can be granted.

## FACTS ALLEGED IN THE COMPLAINT[1]

Mr. Roberts alleges that on October 7, 2015, he was standing on the front porch of 27 Abington Avenue when co-Defendants, Officers Evodio Hendrix, Maurice Ward, Wayne Jenkins and Marcus Taylor, pulled their unmarked vehicle in front of the residence and searched him. (ECF No. 1, Compl. ¶¶ 93-95.) Mr. Roberts alleges that the co-Defendant police officers then planted evidence at the scene. (ECF No. 1, Compl. ¶ 98.) Mr. Roberts alleges that later that day the co-defendants claimed he was in possession of a firearm and pulled it out. (ECF No. 1, Compl. ¶¶ 99-100.) Mr. Roberts alleges that the co-Defendant police officers placed him in custody and charged him with violations of multiple provisions of the Maryland criminal code for possession of a firearm and possesion of a firearm after having been convicted of a drug felony. (ECF No. 1, Compl. ¶ 104.) Mr. Roberts was held in state custody awaiting trial. (ECF No. 1, Compl. ¶ 105.)

Mr. Roberts plead guilty to possessing a firearm after having been convicted of a drug felony and a subsequent violation of probation. (ECF No. 1, Compl. ¶ 106.)

---

[1] These facts are assumed to be true for purposes of this motion only.

Mr. Roberts asserts that all of the police officers involved with this case were indicted in this court for being a rogue criminal enterprise that routinely stole, planted evidence and committed violent felonies in furtherance of their criminal enterprise. (ECF No. 1, Compl. ¶ 107.) On July 5, 2017, the SAO moved to withdraw Mr. Roberts' guilty plea and entered a Nolle Prosequi for each of the original charges and violation of probation. (ECF No. 1, Compl. ¶ 108.) Mr. Roberts was released from prison after almost two years following his arrest. (ECF No. 1, Compl. ¶ 109.)

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc., v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This Court should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party." *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). This Court, however, may disregard conclusions of law or unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine legal sufficiency of the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading must

3

contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The purpose of the pleading requirement is "to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal*, 248 F.3d at 326 (quoting *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.**

The Eleventh Amendment of the United States Constitution bars a suit in federal court against a State, one of it agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the State's sovereign immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalfe and Easy, Inc.*, 506 U.S. 139, 144-45 (1993); *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989); *Pennhurst State School & Hospital v. Haldeman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001); U.S. Const. amend. XI; Md. Code Ann., Const., Art IV, § 1. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett,* 531 U.S. at 363. "A State's constitutional interest in immunity encompasses not merely

whether it may be sued, but where it may be sued." *Pennhurst,* 465 U.S. at 99. Although Maryland has waived its sovereign immunity for certain actions brought in its state courts under the Maryland Torts Claims Act, Md. Code Ann., State Gov't § 12-101 *et seq.*, it has not waived its immunity under the Eleventh Amendment for suits in federal court. *See e.g. Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d. 512, 513 (D. Md. 2003).

Because the SAO is a State entity[2] the State of Maryland is the real party in interest.[3] *Edelman v. Jordan*, 415 U.S. 651, 662-65 (1974) (finding that if damages would be payable from the state treasury, then the state is the real party of interest even though officials are the nominal parties); *Will*, 491 U.S. at 71 (finding no difference in a suit against a state officer in their official capacity and a suit against the state itself.) Because the State of Maryland has not waived its sovereign immunity, nor has the State's sovereign immunity been abrogated by any of the legal theories advanced by Mr. Roberts, a suit brought in federal court for money damages against the SAO is an action against the State of Maryland and is barred by the Eleventh Amendment. *Metcalfe*, 506 U.S. at 144-45; Md. Code Ann., State Gov't. § 12-101(a)(8) (a state's attorney is "State personnel"); Md. Code Ann., State

---

[2] Technically, the Office of the State's Attorney is not a legal entity; however, the same argument would apply if the State's Attorney had been sued. The State's Attorney is an official who would be sued in her official capacity.

[3] The complaint is not saved from Eleventh Amendment immunity by virtue of its recitation of 42 U.S.C. § 1983, because the SAO is not "persons" subject to suit under 42 U.S.C. § 1983. *See Will,* 491 U.S. at 64-70 (holding that a State is not a "person" subject to suit under § 1983 and, therefore, States cannot be sued for damages under that statute). Consequently, "[a]n action for money damages under § 1983 cannot be maintained against a state, a state agency, or a state official" acting in his official capacity. *Ritchie v. Donnelly*, 324 Md. 344, 355 (1991).

Gov't § 12-101(a)(1) (a State employee or official is paid in whole or in part by the Central Payroll Bureau in the Office of the Comptroller of the Treasury").

For these reasons, all claims against the SAO must be dismissed.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY VARIOUS COMMON LAW AND STATUTORY IMMUNITY DOCTRINES.

### A. Plaintiff's Claims are Barred byo Absolute Prosecutorial Immunity

At common law, prosecutors are absolutely immune from civil liability for claims arising from their role in the judicial process. *Imbler v. Pachtman*, 429 U.S. 409, 422-23 (1976) (noting that prosecutors "enjoyed an absolute immunity from civil liability with respect to their prosecutorial conduct…" based upon the same considerations that underlie judicial and grand jury immunity namely, a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decision instead of exercising the independence of judgment required by his public trust.")

The SAO is entitled to absolute immunity from suit for the plaintiff's claims that they engaged in unlawful behavior, because the decision regarding whom to prosecute is a core function of their roles as advocates for the State. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that state prosecutors enjoy absolute immunity form suit for damages under 42 U.S.C. § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process," *Id*. at 430. Because absolute immunity 'contravenes the basic tenet that individuals be held accountable for their wrongful conduct," *Westfall v. Erwin,* 484 U.S. 292, 295-96 (1988), the focus of the immunity

analysis is "on the conduct for which the immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful," *Lyles v. Sparks*, 79 F.3d 372, 376-77 (4th Cir. 1996) (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).

In *Imbler*, the Supreme Court accorded absolute immunity to a prosecutor who was accused of maliciously and unlawfully charging the plaintiff with murder. *See* 424 U.S. at 415-16. The Court emphasized the importance of "enabling [a prosecutor] to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (quoting *Imbler*, 424 U.S. at 424). Such discretionary decisions regarding "whether and when to prosecute' are among "the duties of the prosecutor in his role as advocate for the State," *Imbler*, 424 U.S. 431 n.33, and are intimately associated with the judicial phase of the criminal process." *Id*. at 430-31; *see also Springmen v. Williams*, 122 F.3d 211-212 (4th Cir. 1997) (holding that a Maryland Assistant State's Attorney was entitled to absolute immunity "for an action at the core of her responsibilities—deciding whether to proceed with a prosecution").

In *Nero v. Mosby*, 803 F.3d 106 (4th Cir. 2018), police officers, who had been charged criminally for their actions relating to the arrest and transport of an accused, brought an action under 42 U.S.C. § 1983 against the state's attorney alleging false arrest, false imprisonment, abuse of process, conspiracy, malicious prosecution, defamation, and false light invasion of privacy. The officers were either acquitted or the charges were dismissed. The officers claimed that the prosecutor anipulated evidence to obtain indictments. *Nero*, 803 F.3d at 120. In holding that absolute prosecutorial immunity applied, the Fourth Circuit stated that absolute prosecutorial immunity ensures "a fair,

7

impartial criminal justice system, in which prosecutors have the independence to hold even powerful wrongdoers accountable without fear of vexatious litigation," *Nero*, 803 F.3d at 120 (citing *Imbler*, 424 U.S. at 424-25). In determining that absolute prosecutorial immunity applied, the court held that it looks at the act challenged rather than the prosecutor's preceding acts. *Nero*, 803 F.3d at 120. The court declined to eliminate prosecutorial immunity in police misconduct cases. *Nero*, 803 F.3d at 120. Given the allegations of police misconduct in this case, absolute prosecutorial immunity should apply.

Here the claims relate to the exercise of a prosecutor's judgment about which cases to prosecute and against which individuals, and thus, should be barred by abosolute prosecutorial immunity. As the Court articulated in *Imbler*, "[t]he public trust of the prosecutor's office would suffer if he [or she] were constrained in making every decision about whom to prosecute "by the consequences in terms of his [or her] own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424-25. As with malicious prosecution, selective prosecution "suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 425.

For these reasons, regardless of their alleged motives, the SAO is entitled to absolute immunity for their decisions regarding whether to prosecute Mr. Roberts and whether to prosecute members of the Gun Trace Task Force. Nero, 803 F.3d at 120. See *Springmen*, 122 F.3d at 212; *see also Bernard v. County of Suffolk*, 356 F.3d 495, 504-05 (2d Cir. 2004) (holding that absolute immunity shields prosecutors from suit under § 1983 for alleged

8

selective prosecution regardless of whether "improper motives" may have influenced a "prosecutor's charging decisions" and dismissing claim of alleged selective prosecution based on political affiliation). As the Fourth Circuit has articulated, prosecutors' decisions about whether or not to prosecute are "based on the myriad of potentially relevant factors and their permutations" and "require the very professional judgment that is conferred upon and expected from prosecutors in discharging their responsibilities." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

For these reasons, all claims against the SAO must be dismissed.

### B. Even if Not Barred by Absolute Immunity, Plaintiff's Claims Are Barred By Qualified Immunity.

To the extent Mr. Roberts's claims contained in his complaint is construed as against the State's Attorney in her individual capacity, such claims, in addition to being barred by absolute immunity, are barred by qualified immunity. As state actors, the individual is immune from § 1983 claims for damages if her actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Supreme Court has explained that "clearly established" means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). In order to defeat a qualified immunity defense, Mr. Roberts must demonstrate that an individual Defendant violated a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (defendant's right to qualified immunity is not defeated unless, as a preliminary matter, the facts "make out a violation of a constitutional

right"). "The protection of qualified immunity applies regardless of whether the government official's error is [']a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.[']" *Id*. at 231 (citations omitted).

Moreover, the defense of qualified immunity is properly addressed at the pleadings stage where, as in this case, the government official was acting in accordance with established law and policy. *See id.* at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) ("Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"). To that end, the Supreme Court has "'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The purpose of the qualified immunity doctrine is to give State Officials sufficient "breathing room" to make difficult discretionary decisions. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Al-Kidd*, 563 U.S. at 743).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. As indicated below, the complaint fails to allege facts that demonstrate a violation of Mr. Roberts's due process rights by the SAO let alone any clearly established right of which a reasonable State official would have known.

For example, Mr. Roberts alleges that the SAO's actions in other cases led to the violation of his rights. However, Mr. Roberts does not allege how this alleged failure

violated a clearly established right that the State official would have known. Moreover, he does not allege facts demonstrating how any member of the SAO would have foreseen any violation of his rights. Because Mr. Roberts does not allege facts demonstrating a violation of a clearly established right by the SAO, and because "as the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law" (*Malley v. Briggs*, 475 U.S. 335, 341 (1986)), the claims against the SAO should be dismissed.

### III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Setting aside the various immunities that are available to the SAO, the complaint also fails to state a claim upon which relief can be granted and is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading:

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Mr. Roberts's complaint should be dismissed because it fails to satisfy the "plausibility" standard adopted by the Supreme Court. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). This "plausibility" standard demands "more than a sheer possibility that a defendant

has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). That is, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation omitted).

In applying this standard, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50.

When stripped of its conclusory statements, Mr. Roberts's complaint does not state a plausible claim for relief against the SAO. Although Mr. Roberts alleges that his constitutional rights were violated, the complaint does not contain a statement of facts that support his conclusory assertions as to the SAO. The allegations must be ignored because they lack the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wag More Dogs, LLC. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678).

Here, Mr. Roberts has failed to plead plausible causes of action with regard to the SAO. The SAOs "would have little idea where to begin" in responding to the complaint. *Twombly.*, 550 U.S. 544, 565 n. 10 (2007). Therefore, the complaint does not "contain sufficient allegations of underlying facts" to give the SAO, "fair notice [] to enable [them] to defend [them]sel[ves] effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2007).

The complaint, while replete with "the-defendant-unlawfully-harmed-me accusation[s]," fails to allege facts to support the elements required of each cause of action,

instead "offer[ing] labels and conclusions" and offering "naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678. For example, in paragraph 373, Mr. Roberts states that the "Defendant SAO has engaged in a pattern, practice, policy or custom of allowing, enabling and facilitating Defendant BPD [Baltimore Police Department] officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals. Defendant SAO has also engaged in a pattern, practice, policy or custom of allowing, enabling, and facilitating Defendant BPD officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers" but does not state how the SAO engaged in these practices and how it was foreseeable that he would suffer harm as a result.

What Mr. Roberts omits is a clear and concise statement of the facts necessary to constitute any cause of action as required by Fed. R. Civ. P. 8. Absent a clear statement demonstrating why he is entitled to relief, Mr. Roberts fails to satisfy any of the pleading requirements. Thus, because Mr. Roberts has failed to state any claim upon which relief can be granted, the complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant, Office of the State's Attorney for Baltimore City, moves that this Court dismiss this matter with prejudice.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

s/ Wendy L. Shiff
WENDY L. SHIFF
Assistant Attorney General
Bar No. 09076
200 St. Paul Place, 20th floor
Baltimore, Maryland 21202
P. (410) 576-6996
F. (410) 576-6955
wshiff@oag.state.md.us

Attorneys for Defendant Office of the State's Attorney for Baltimore City

## CERTIFICATE OF SERVICE

I certify that on this 16th day of August, 2018, a copy of the foregoing was served via the Court's CM/ECF system on the persons entitled to receive such notice and was served by postage prepaid, first class mail on all other defendants.

/s/ Wendy L. Shiff
Wendy L. Shiff